UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:04CV-4-M

SALLY BROESSEL,
On Behalf of Herself And All Others
Similarly Situated                                                   PLAINTIFFS


v.


TRIAD GUARANTY INSURANCE CORP.                           DEFENDANT


## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon motion for summary judgment filed by the Triad Guaranty Insurance Corp. ("Triad") [DN 49]. Plaintiff representative, Sally Broessel ("Broessel"), claims she is entitled to damages from Triad's failure to issue her proper notice under the Fair Credit Reporting Act ("FCRA") arising from an adverse determination regarding her mortgage insurance premium based upon her credit report. Triad moved for summary judgment arguing that 1) the transaction was a credit transaction which did not trigger FCRA's adverse action notice requirement; 2) the initial premium amount could not constitute an adverse action; 3) its actions were not taken with respect to a consumer; and 4) it did not take any action based on Broessel's credit score. Having been fully briefed and argued, the matter now stands ripe for decision. For the reasons stated below, Triad's motion for summary judgment is **DENIED**.

## I.  LEGAL STANDARD

The summary judgment standard requires that the Court find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Some facts of this case are disputed, so in review the Court reviews only the uncontested facts.

## II. BACKGROUND

This case comes to the Court as a class action lawsuit under FCRA, 15 U.S.C. § 1681, *et seq.*, (2004).  Ms. Broessel brought this action January 7, 2004 on behalf of herself and others who were charged premiums higher than the best rate offered for mortgage insurance from Triad.  She claims that FCRA requires Triad to give notice of the adverse action since it was based, at least in part, on  negative credit information.

Ms. Broessel is a resident of Campbellsville, Kentucky.  She applied for a loan from Countrywide Credit Industries ("Countrywide") January 13, 2003, but was denied. Countrywide generated an effective notice to Broessel under FCRA.  Later, she purchased a home in Campbellsville on March 31, 2003 using an approved Countrywide loan to

2

completely finance the purchase.  Because she tendered no down payment, Broessel was required to pay mortgage insurance.  Countrywide submitted Broessel's loan information to the Federal National Mortgage Association's ("Fannie Mae") Desktop Underwriter which analyzes and informs lenders whether Fannie Mae would consider purchasing the loan on the secondary market.  Fannie Mae informed Countrywide that they would require the borrower to pay mortgage insurance of 35%.

After she contested the "inflated insurance premium" with Countrywide, Broessel agreed to pay $342.61 for the mortgage insurance.  The amount however was subject to decrease if the premium set by the mortgage insurer was lower.  The mortgage insurance premium was added as part of her regular mortgage payment which Countrywide used to pay the mortgage insurer.  Countrywide selected Triad to provide the mortgage insurance the day after the closing, April 1, 2003.  Countrywide submitted a "Delegated EDI Application" ("Insurance Application") to Triad with Broessel's credit score along with other loan information to obtain the insurance, giving it an "A-minus" rating.

Triad relied on the Insurance Application in setting the premium at $341.78 per month, which as both parties admit, was not their best rate.  Both parties also admit that Triad did not generate any "Adverse action" notice to Broessel.  Triad argues that 1) the transaction was part of the credit transaction for the loan which did not trigger FCRA's adverse action notice requirement; 2) the $341.78 amount was not an "increase" so it could not constitute an adverse action; 3) Triad's contractual relationship was with their customer, Countrywide, not Broessel, so their actions were not taken with respect to a consumer; and 4) their

3

determination was based on the Insurance Application provided by Countrywide, not on Broessel's credit report.  The arguments presented by Triad present issues of first impression in this circuit.

## III.  DISCUSSION

The Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.,* was amended in 1970 in order to add provisions collectively known as FCRA.  Scharpf v. AIG Mktg., Inc., 242 F.Supp. 2d 455, 458 (W.D. Ky. 2003).  Authorized users of credit reports are required to issue adverse action notices to consumers if they 1) take "any adverse action" 2) "with respect to any consumer" 3) which "is based in whole or in part on any information contained in a consumer report."  15 U.S.C. §1681m(a).  Both Triad and Broessel admit that Triad would be an authorized user of Broessel's credit report.  Prior to addressing the three points mentioned above, the Court must first address Triad's argument that this consumer transaction should be evaluated under the credit prong of FCRA rather than the insurance prong.

### A.  FCRA Adverse Action Transaction Prongs

Generally, FCRA delineates three categories of consumer transactions with differing standards for what constitutes an adverse action: 1) actions for extensions of credit; 2) actions for insurance coverage or underwriting; and 3) an application or so-called catch-all provision encompassing any action on a consumer application.  15 U.S.C. §§1681a(k)(1)(A), 1691(d)(6), 1681 a(k)(1)(B)(I), 1681 a)k)(1)(B)(iv).  Triad argues that the mortgage insurance transaction should be evaluated under the credit transaction prong of FCRA.

4

Conversely, Broessel claims the transaction falls under the insurance and/or the catch-all prongs of FCRA. It is only necessary here to evaluate the credit and insurance prongs.

Under FCRA's credit prong an adverse action is defined as, "a denial or revocation of credit, a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."   15 U.S.C. §§1681a(k)(1)(A), 1691(d)(6).  FCRA's insurance prong defines an adverse action as ". . .a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, **any insurance, existing or applied for, in connection with the underwriting of insurance** . . . ;" not just an increase in an existing policy.   15 U.S.C. §§ 1681a(k)(1)(B)(I) (emphasis added).

The significance of this debate is that under the credit prong, a consumer's acceptance of a counteroffer allows a company to dismiss the notice requirement as part of an accepted counteroffer.  See Harper v. Lindsay Chevrolet Oldsmobile LLC, 212 F. Supp. 2d 582 (E.D. Va. 2002); Diaz v. Va. Hous. Dev. Auth., 117 F. Supp 2d 500.   Triad argues that the transaction should be evaluated under the credit prong of FCRA because the transaction for mortgage insurance was an integral part of a credit transaction, namely the provision of a mortgage loan by Countrywide.   Triad cites Broessel's acceptance of the higher monthly mortgage payment offered by Countrywide, which included the mortgage insurance premium, as the valid counteroffer.  Thus, according to Triad, no adverse action notice was required to be given.

The Court rejects Triad's argument that this consumer transaction should be evaluated

under the credit prong. Triad is not in the business of extending credit, they issue mortgage insurance policies. No court has found mortgage insurance to be anything other than "the underwriting of insurance" under FCRA. Glatt v. PMI Group, Inc. Case No. 2:03-CV-00326 (M.D. Fla Jan.2, 2004)(citing Home Guar. Ins. Corp. v. Numerica Serv. Inc., 835 F.2d 1354 (11th Cir. 1998). The language of the FCRA is clear that the adverse action notice requirement is to be applied to any transaction involving the underwriting of insurance. See Conn. Nat'l Bank v. Germain, 503 U.S. 249; United States v. Gonzalez, 520 U.S. 1 (1994)(finding the word "any" must be read broadly in the absence of limiting language). This transaction falls squarely under the insurance prong as laid out in FCRA. With that issue decided, the Court must now evaluate what constitutes an adverse action which triggers notice under FCRA with regard to an insurance transaction.

**B. Did Triad take Adverse Action Under FCRA?**

FCRA's defines an adverse action under the insurance prong as ". . .a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for, in connection with the underwriting of insurance." The adverse action notice requirement promotes fairness and accuracy in credit reporting by advising consumers that an adverse action has been taken against them, the type of action, and alerts them to view a free copy of the consumer report at issue to correct any mistakes for their own economic well being. Reynolds v. Hartford Fin. Servs. Group, Inc., 416 F.3d.1097 (9th Cir. 2005); Crane v. Am. Home Mortgage, Corp., 2004 WL 1529165 (E.D. Pa. 2004); Thele v. Sunrise Chevlrolet,

2004 WL 1194751 (N.D.Ill. 2004); Braxton v. Farmer's Ins. Group, 209 F.R.D. 654, 656-657 (N.D.Ala. 2002); See 15 U.S.C. § 1681m(a). Furthermore, "the adverse action provision is to be read broadly" to include any action taken on the basis of a consumer report that is adverse to the consumer's interest. Scharpf v. AIG Mktg., Inc., 242 F.Supp. 2d 455, 467 (W.D. Ky. 2003) (internal citations omitted).

Triad contends that the initial premium offered to Broessel could not constitute an adverse action because it was lower than the amount Countrywide initially quoted to her. Because it was not an increase, the Defendant argues no notice was required under the statute. The Court rejects this argument as being too narrow and contrary to the purposes of FCRA.

In Reynolds v. Hartford Fin. Servs. Group, Inc., consumers brought class actions against insurers in connection with automobile policies from the Geico family of companies and homeowners policies from Hartford Financial Services Group. 416 F.3d at 1101. The consumers alleged a violation of FCRA due to the companies' failure to effectuate adverse action notices reflecting the consumers' negative credit reports used in determining their initial policy rates. Id. The United States District Court for the District of Oregon granted summary judgment for insurers in both actions, and the respective consumers appealed. Id. On appeal, the Ninth Circuit consolidated the appeals against Geico and Hartford Financial Services Group to determine: 1) whether a rate first charged in an initial policy of insurance constitutes an increased rate for purposes of the FCRA adverse action notice requirement; and 2) whether an adverse action occurs when a consumer would have received a lower rate

if his credit information had been more favorable or, in the alternative, an insurance company only has to provide notice if the consumer's credit information is below average. Id. at 1101-1102.

The Reynolds court decided that for insurers an adverse action under FRCA applies to the rate first charged in initial policies of insurance, which may act to trigger the notice requirement.  Id.  The court further found that the notice is required whenever a consumer would have received a lower rate for insurance had the credit information been more favorable. Id.  Reynolds also established that consumers are entitled to be notified by any company that refuses to provide a policy at a lower rate **based in whole or in part** on the consumer's credit information. Id. at 1100-1101(emphasis added).

 In this case, the Defendant and Plaintiff agree that the initial premium was not the lowest premium available.  In light of Reynolds, which the Court adopts as a reasonable interpretation of FCRA, since Triad's initial rate was higher than that which Broessel would have received had her credit information been more favorable, an adverse action notice was required despite the fact that the rate was lower than originally quoted.  This interpretation is consistent with the purposes of FCRA.

## C.  Was Triad's Action Taken With Respect to a Consumer?

Triad argues there is no contractual relationship between it and the consumer in this case.  Triad issues the insurance policy to the mortgage lender as the insured and not the consumer/borrower, so it argues that it has taken no action directed at or "with respect to any consumer" as required to trigger the adverse action notice under FRCA 15 U.S.C.

8

§1681m(a).  Triad depends on the lender to provide the credit score and rate category.  Triad

contends that it does not even know which Credit Reporting Agency provides the score so

it would be unable to provide adequate notice under FCRA.

Privity of contract is not a requirement under the plain language of FCRA. <u>See</u> 15

U.S.C. § 1681m(a).  FCRA states in pertinent part "that **any person** who 'takes any adverse

action with respect to any consumer that is based in whole or in part on any information

contained in a consumer report' must provide 'notice of the adverse action to the consumer.'"

<u>Id</u>. at 1100 (quoting 15 U.S.C. § 1681m(a))(emphasis added).  Triad is "any person" and the

Court has held that it took an adverse action.  The adverse action was with respect to a

consumer.   The only question remaining is whether the action was based on information

contained in the consumer's credit report.[1]

## D.  Was Triad's Action Based on Plaintiff's Credit Report?

Triad contends that it took no action based on Plaintiff's credit report, rather, it relied

solely on the information contained in the insurance application provided by Countrywide.

Triad simply delivered a product to correspond to Countrywide's specifications. Triad

characterizes the transaction as automatic and electronic – one in which no human was

involved.

Notwithstanding the automatic nature of the transaction, the determination of

---

[1]The fact that the insurance application did not provide the identity of the credit reporting
agency is not significant.  Triad can easily edit the insurance application form to create a space
on it for information related to the identity of the reporting agency.  Triad's obligations under
FRCA are not excused by and it can easily

Broessel's mortgage insurance premium was based on information which Triad used to determine the premium for the mortgage insurance.  Part of the information used was Broessel's credit score which was derived from her credit report.  Whether that evaluation was done electronically or otherwise is immaterial.  The ultimate decision as to the amount of her premium was based, in whole or in part, on a consumer report.  15 U.S.C. §1681m(a).

In sum, the Court concludes that Triad took adverse action with respect to Ms. Broessel based on information contained in her credit report when it charged a higher premium than would have otherwise been charged had her credit information been better. Thus, Triad was required by FCRA to issue an adverse action notice to Broessel and others similarly situated.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for summary judgment filed by Triad [DN 49] is **denied.**

cc: Counsel of Record

10